## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**LISA BOHANNON,**
**and**
**TIMOTHY BOHANNON,**

      **Plaintiffs,**

**v.**                                  **CIVIL ACTION NO. 3:21cv402**

**ELITE AUTO INC.,**
**d/b/a US AUTO CENTER,**

      **Defendant.**

## COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

1.      This case arises from a fraud committed against a couple who bought a Ford truck from Defendant. The dealer offered the truck on specific terms set forth in a credit contract they signed, but then forged their signatures to a different credit contract that included a $425.00 extra charge for a credit insurance product called GAP. Although the GAP charge should have been optional, the creditor made it mandatory. Additionally, although the dealer charged for registration and tags for the truck, these were not provided, and the Plaintiffs spent months getting proper documentation from the Virginia Department of Motor Vehicles (DMV). The dealer's fraudulent scheme violated the federal Truth in Lending Act (TILA), the federal Equal Credit Opportunity Act (ECOA), and also the Virginia Consumer Protection Act (VCPA), and constituted fraud. Furthermore, the dealer included an arbitration clause in its form contract with Plaintiffs even though it had no intention of honoring that clause. Plaintiffs bring this action to recover actual damages, statutory damages, punitive damages, and attorneys' fees and costs.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action pursuant to the TILA, 15 U.S.C. § 1640, the ECOA, 15 U.S.C. § 1691e(f), and 28 U.S.C. §§ 1331.  Supplemental jurisdiction of the state law claims regarding the same transactions and events is provided under 28 U.S.C § 1367.  This Court has venue over this action because the transaction occurred in South Chesterfield, Virginia.

## PARTIES

3.     Plaintiffs Timothy and Lisa Bohannon (the Bohannons), are each a natural person, who negotiated a car sale on credit for consumer purposes as governed by the TILA, ECOA, and the VCPA.

4.      Elite Auto Inc., doing business as US Auto Center (US Auto), is a Virginia corporation and a retail automobile dealer doing business at 16638 Jefferson Davis Hwy., South Chesterfield, Virginia. In the transaction with Plaintiffs, US Auto was a "creditor" as defined by the TILA, 15 U.S.C. § 1602(g), and the ECOA, 15 U.S.C. §1691a(e).

5.     US Auto's registered agent is Igor Coada, located at 16638 Jefferson Davis Hwy., South Chesterfield, Virginia, 23834.

## FACTS

6.     On June 26, 2020, US Auto agreed to sell the Bohannons a 2007 Ford F150 SuperCrew truck, VIN 1FTPW14V37KB12248, on credit.

7.     US Auto regularly extends credit to consumers that is payable in four or more installments or for which interest is charged and does so through retail installment sale contracts initially payable to it.

8.     As a creditor, on June 26, 2020, US Auto should have provided Plaintiffs with accurate TILA disclosures about the credit terms it was offering.

9.      US Auto prepared and Plaintiffs signed a credit contract with a total of payments of $30,337.80.

10.     Attached as Exhibit A is a true and correct copy of the credit contract signed by the Bohannons.

11.     By presenting this credit contract for signature, US Auto represented that the Bohannons were approved for credit on these terms.

12.     The US Auto representative told them they were approved for this credit.

13.     The Bohannons took possession of the truck and drove off the lot thinking that they had been approved for this credit.

14.     Actually, US Auto was not intending to treat them as approved for this credit.

15.     Instead, US Auto required that the transaction include a GAP agreement, which is a form of credit insurance.

16.     The charge for the GAP coverage was $425.00.

17.     On July 2, 2020, US Auto created a second credit contract that included the $425.00 GAP coverage.

18.     US Auto then placed electronic signatures on this document for the Bohannons without their approval.

19.     Attached as Exhibit B is a true and correct copy of the second credit contract.

20.     Exhibit B was never signed by the Bohannons, and they never agreed to purchase GAP.

21.     With the addition of the GAP, the total amount of payments moved from $30,337.80 to $30,837.00.

22.     When the Bohannons found out about this, they objected.

23.     US Auto responded that the GAP was mandatory for their transaction.

24.     US Auto refused to honor the credit contract that the Bohannons had actually signed.

25.     US Auto then sold the second credit contract to an assignee.

26.     Additionally, although on Exhibit A Plaintiffs were charged a total of $80.75 in registration and title fees, and another $17.00 for US Auto to communicate electronically with the DMV about these fees, they did not receive their registration and tags.

27.     Plaintiffs had to spend several months and incur additional expenses to obtain their registration documents and tags from the DMV.

28.     Pursuant to the arbitration clause on page 4 of Exhibit A, the Bohannons filed and served an arbitration demand on June 1, 2021, which the American Arbitration Association (AAA) assigned case number 01-21-0004-0969.

29.     The arbitration clause is part of US Auto's standard form contract and because of it the Bohannons reasonably believed that if they filed this action initially in this court, it would just be compelled to arbitration.

30.     The Bohannons reasonably believed that US Auto had done all it was required by AAA to allow such arbitrations to proceed with the AAA.

31.     The Bohannons reasonably believed that this matter was moving forward with the AAA.

32.     On June 14, 2021, the AAA notified all parties that it would not administer the claim because US Auto failed to comply with its policies.

33.     A true and accurate copy of the AAA letter is attached as Exhibit C.

34.     As stated in the letter, US Auto has to register its clause on the AAA Consumer Clause Registry to allow it to use this clause.

35.     AAA charges a fee for businesses to use clauses that select the AAA as the arbitration provider.

36.     For such businesses, the cost of reviewing the clause is $500.00, and a yearly registry fee of $500 is charged to maintain it on the AAA Consumer Clause Registry.

37.     US Auto uses an arbitration clause that selects the AAA without paying the AAA Consumer Clause Registry fee.

38.     US Auto was put on notice by the AAA that it could not use this clause to conduct arbitrations with the AAA without paying the AAA Consumer Clause Registry fee.

39.     US Auto refused to pay the fee to AAA.

40.     US Auto never intended to actually pay the fees to the AAA for any consumer arbitrations.

41.     Instead, US Auto uses the arbitration clause that selects AAA as a claims suppression device.

42.     US Auto knows that people are less likely to file any claim in a court of record if it can simply be compelled to arbitration.

43.     US Auto knows that people are less likely to file any claim in arbitration at all, and knows, if they did, that AAA would not administer it.

44.     The law does not tolerate such misuse of arbitration clauses.

45.     As shown in the attached Judgment Order (Exhibit D) against a car dealer who engaged in similar behavior, punitive damages are properly assessed against a dealer who misrepresents its intent to be bound by an arbitration clause.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

### Violation of the Truth in Lending Act- 15 U.S.C. § 1638(a)

46.     As the creditor in the transaction, US Auto was required to provide the Bohannons with accurate TILA disclosures in writing about the credit it was offering before asking the Bohannons to agree to a credit transaction.

47.     US Auto provided TILA disclosures to the Bohannons as shown on Exhibit A.

48.     The TILA disclosures on Exhibit A were not accurate because the only credit that US Auto would provide them for the truck would necessarily include a mandatory GAP charge of $425.00.

49.     US Auto violated the TILA and Regulation Z because it did not provide accurate TILA disclosures to the Bohannons in a form they could keep before they signed.

50.     Furthermore, because the GAP charge was mandatory, it should have been included as a Finance Charge and could not be in the Amount Financed.

51.     Thus, in the second credit contract, even if these had been provided to the Bohannons, US Auto violated the TILA and Regulation Z because the material TILA disclosures it provided were not accurate.

52.     The Bohannons suffered actual damages as a result of these violations, including that the credit contract sold to a third-party included charges to which they never agreed.

## SECOND CAUSE OF ACTION

### Violation of the Equal Credit Opportunity Act- 15 U.S.C. § 1691(d)

53.      US Auto violated the ECOA and Regulation B by not providing the Bohannons with proper notice of the action taken regarding the Bohannons's credit application as required by 15 U.S.C. § 1691(d) and 12 C.F.R. § 202.9.

54.     US Auto misrepresented that the Bohannons's application for credit was approved for the terms shown on Exhibit A, when US Auto actually did not intend to make credit available to them on those terms.

55.     The Bohannons were harmed by this violation because they believed they had been approved on the terms shown in Exhibit A, signed it and took the truck under those terms.

56.     US Auto also violated the ECOA by not providing the Bohannons proper notice of the adverse action taken by it when it unilaterally canceled the credit contract shown in Exhibit A, and also when it then created a new one that required several hundred dollars more in payments.

57.     US Auto acts on a sufficient number of credit transactions each year such that its adverse action notice should have been in writing.

58.     As a result of these ECOA violations, the Bohannons suffered actual damages, including but not limited to, the loss of their right to information about the actions taken on their credit application and the reasons for those actions, the loss of the terms that they accepted, and the loss of time, and inconvenience and other distress, trying to resolve the situation that US Auto created.

## THIRD CAUSE OF ACTION

### Fraud

59.     US Auto falsely represented its intent to sell the truck to the Bohannons for the terms shown in Exhibit A, including the total price, the payment terms, that the contract had no GAP, and that any dispute could be resolved in arbitration with US Auto paying the arbitral fees.

60.     US Auto then falsely represented on Exhibit B that the Bohannons had signed this credit contract and agreed to add GAP to the transaction, and concealed from the Bohannons that it had done this.

61.     Each of these representations and concealments concerned a material fact about the transaction.

62.     US Auto knowingly and intentionally made these false representations and concealments and intended that the Bohannons would rely upon them.

63.     The Bohannons relied on these false representations and concealments and suffered harm as a result of that reliance.

64.     As a result of their reliance on US Auto's misrepresentations and concealments, the Bohannons suffered actual damages, including but not limited to, the loss of the terms that they accepted, lost time, and inconvenience and other distress.

65.     US Auto's actions were intentional or in such reckless disregard for the rights of Plaintiffs that punitive damages should be assessed against it for each of these misrepresentations and concealments.

## FOURTH CAUSE OF ACTION

### Violation of the Virginia Consumer Protection Act, Va. Code § 59.1-200

66.     Pursuant to Va. Code § 59.1-200, Plaintiffs are entitled to pursue a VCPA claim against US Auto, who was a "supplier" of "goods" in a "consumer transaction" as those terms are defined in Va. Code § 59.1-198.

67.     Against the Bohannons, US Auto violated the prohibition contained in Va. Code § 59.1-200(A)(14) against using any misrepresentation in connection with a consumer transaction in several different ways, including misrepresenting its intent to sell the vehicle for the terms shown in in Exhibit A, including the total price, the payment terms, that the contract had no GAP, and that any dispute could be resolved in arbitration with US Auto paying the arbitral fees, by forging their signatures to Exhibit B, and by not providing them with the registration and tags for the truck.

68.     US Auto also violated the prohibition contained in Va. Code § 59.1-200(A)(8) against advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised, by not selling the car for the terms shown in in Exhibit A, including the total price, the payment terms, that the contract had no GAP, and that any dispute could be resolved in arbitration with US Auto paying the arbitral fees, and by not providing them with the registration and tags for the truck.

69.     US Auto committed these VCPA violations deliberately and willfully, or in the alternative did so negligently, as a result of not maintaining procedures reasonably adopted to avoid the violations.

70.     As a result of the VCPA violations against them, the Bohannons suffered actual damages, including but not limited to, the loss of the terms that they accepted, lost time, and inconvenience and other distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully prays that this Court:

1.  Assume jurisdiction of this case;

2.  Award actual damages to the Bohannons under the TILA, ECOA, Fraud, and VCPA claims, in a manner so as to avoid a double recovery for the same harm;

3.  Award statutory damages in the amount of $2,000.00, in accordance with the Truth in Lending Act, 15 U.S.C. § 1640(a)(2)(A)(i);

4. Award statutory punitive damages in the amount of $10,000.00 against Defendant US Auto for violations of the Equal Credit Opportunity Act, 15 U.S.C. § 1691e(b);

5. Award three times the actual damages or $1,000.00, whichever is greater, for each willful violation of the Virginia Consumer Protection Act pursuant to Va. Code § 59.1-204(A);

6.  Award punitive damages against US Auto based upon its fraud up to the amount allowed under Virginia law;

7.  Award Plaintiffs' costs and reasonable attorney's fees in accordance with the Truth in Lending Act, the Equal Credit Opportunity Act, the Virginia Consumer Protection Act, and Virginia common law;

8.  Award pre-judgment and post-judgment interest; and

9.  Award such other relief as the Court deems appropriate.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted,
LISA BOHANNON
TIMOTHY BOHANNON
By Counsel


___/s/ Dale W. Pittman_____
By: Dale W. Pittman, VSB#15673
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803
(804) 861-6000
(804) 861-3368 Facsimile
dale@pittmanlawoffice.com

Thomas D. Domonoske, VSB #35434
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1A
Newport News, VA 23606
(540) 442-7706
tom@clalegal.com

*Counsel for Plaintiffs*